May it please the court. Eric Carlson for plaintiffs and appellants. I'd like to reserve two minutes for rebuttal. The district court denied preliminary injunctive relief in this case based on two areas of law. The first, the holding that plaintiffs have lost only optional Medicaid services. And second, the holding that these Medicaid beneficiaries had no right under Section 1983 to enforce relevant provisions of federal Medicaid law. The first area of law results from the district court's failure to recognize that in the Oregon Medicaid program, the equivalent of nursing facility services can be provided in an assisted living facility, in a residential care facility, or in an adult foster home. Sotomayor, let me stop you and just ask you sort of a preliminary procedural kind of question, and perhaps both counsel would want to comment on this. We have kind of a computerized thing that tells us the status of cases, and I understand that the Judge Gelderts has recommended that the claims be dismissed on summary judgment or on a 12b-6 motion. And I wonder whether the whole case is going to the preliminary injunction piece of the case is going to at some point be superseded by a final resolution of the case. And if that is correct, what are we supposed to do about that in the context of reviewing the preliminary injunction? It emphasizes the need for this Court to enter injunctive relief on an expedited basis. The recommendation by the magistrate is based on the same legal reasoning that underlies the preliminary injunction denial. Wouldn't it seem logical that the opposite would be true, that we would, if we're about to get a final judgment rather than a preliminary judgment, wouldn't we wait for that and then deal with the whole ball of wax? The problem is, Your Honor, the plaintiffs are individuals who need nursing facility services, and the defendants have not denied that these individuals need nursing facility services. And since February of last year or April of last year, these individuals have been terminated from those long-term care services. They need those. They've been terminated from nursing services or community-based services? If they need nursing services, then perhaps their claim should be that Oregon is required to provide the nursing services, which the statute seems to require. I think that's the crux of this case, Your Honor, because Oregon has terminated both those services for these individuals. Well, what's being sought here is not, as I understand it, an order requiring Oregon to provide those services, but rather to require Oregon to provide the alternative or optional services, the community-based services. No, Your Honor. Oregon has always used the same standard for eligibility for nursing facility services and for home and community-based waiver services. We're asking that that standard be restored to the proper level. Oregon has the ability, if it wished, to limit only the waiver services. That would be allowable under federal Medicaid law, because the waiver services are optional services. And if Oregon chose to do that, it could decide to focus the waiver services only on particular geographic areas of the state or only limit the waiver service to those in categories 1 through 11, for example. But what Oregon has done has denied both the optional waiver services and the mandatory nursing facility services to these individuals. So I think your question, Your Honor, really gets at the pivot point of this case, because if it's assumed that these individuals have only lost the alternative delivery system of the home and community-based waiver services, then there's not a violation of the Medicaid law. But, on the other hand, as is true in this case, if individuals have lost both the waiver services and the nursing facility services, then they are lacking the mandatory nursing facilities that have to be required, that have to be provided under federal Medicaid law. And it ---- Sotomayor, I want to be sure I understood the argument you just gave us, because you seem to be conceding that a State can pick a certain level somewhere in the system. Some States may be rich and they can get everybody all the way through all the levels, and other States may say, we're only going to serve levels 1 through 10 or 1 through 11. And that, in and of itself, you concede is a permissible option by the State. Yes? For the waiver services only, Your Honor. Not for the nursing facility services. And since 19 ---- Separately dealt with in Subsection A, whatever it is. Yes. They're dealt with separately. The mandatory obligation of the State is to provide nursing facility services. And the waiver services are ---- That's the key. That's what ---- To ---- There are various qualifications of persons who are eligible for nursing services, and they're not the same in every State, are they? No, Your Honor. The States have an obligation under Federal Medicaid law to have reasonable standards. And ---- Those standards then are submitted and confirmed by the Federal government. Well, there's no showing here that there's been any review by the Federal government of those standards. They were submitted. They were not. The only evidence in the record is a communication between the State defendants and the Federal government regarding the waiver services, that the amendments submitted by the State defendants have dealt with the waiver services that are provided by the State. There's no ---- There were some 200 or more persons suspected that were in the nursing facilities. Yes, that's correct, Your Honor. And again, that gets to the issue in this case. The approval ---- The statements by the Federal government, by the Centers for Medicare and Medicaid Services, have dealt only with the waiver services. But the actions taken by the State have terminated individuals in the waiver program, have also terminated individuals who have been receiving nursing facility services, and significantly it's depriving individuals in the waiver setting of the long-term care services that they need. Because if there weren't a waiver program, those individuals would be statutorily entitled to receive nursing facility services. The example that we had ---- I'm sorry, Your Honor. What effect does the Federal government's approval of all or a portion of this program have? In other words, sometimes we defer to an agency's interpretation of statutes that are committed to its discretion to interpret. Is that the situation here, or do we owe any deference at all to the Federal government's approval of this program? No, Your Honor. And there are two reasons for that. The first reason is that the approval that has been presented by the State defendants relates only to the waiver program. And as I said, the State has the ability to select particular individuals. You know, there's a ---- you're starting with a large number of people who need nursing facility services. And the State has an ability to select a subset of those individuals of people who are eligible for waiver services. So the State ---- Can they limit also that initial pool of people, I guess, is my question. Can they cut off the least needy of the needy from the whole entire thing? No, Your Honor. The ---- there has to be ---- the Medicaid program was established to establish a certain core of necessary medical services. One of those is nursing facility services. But for everybody who ---- I mean, how do you define who needs those services and where is the level of discretion in defining that? In this case, the evidence shows that the State of Oregon, for over 20 years, has used the system with functional limitations and has designated individuals 1 through 17 as needing nursing facility services. That's been the standard that's been recognized by the State as appropriate. It's only been in the last year that that's changed. And it's clear from the record that that hasn't been because there's been new medical evidence or medical professionals have demonstrated a new and better system, but it's due solely to State budgetary limitations. I understand what it's due to, but I guess I have a hard time reading into the statute a prohibition against a State's deciding to accept for the program only the neediest of the needy. Under your theory, if medicine finds out that there are another eight layers of people who should be included, the State is obliged to do that. I mean, I think that's right, Sharada, that the State is obligated under federal Medicaid law to provide nursing facility services. If a Medicaid program is to have meaning, it has to provide for nursing facility services to people who need nursing facility services. And those standards have to be reasonable. And significantly here, nowhere in the briefing ---- I think it's unreasonable to select levels 1 through 11. Yes, Your Honor. And the reason is that there's no medical support for that. And nowhere in either the trial court or in the appellate court have defendants argued that their new standards accurately reflect who needs nursing facility services. They've never argued plaintiffs don't need nursing facility services. Instead, their position has been we have carte blanche to set eligibility where we choose, and plaintiffs have no right under federal law. There's two points, I think. The two points I started with, there's been a confusion between the optional Medicaid services and the core mandatory nursing facility services, and there's also been a position by defendants adopted by the district court that plaintiffs, regardless of the facts, have no right to seek their statutory entitlement in federal court. So these standards are unreasonable. And if they were to be reasonable, they have to be based on medical evidence. They can't just be moved up and down arbitrarily along with the state budget requirements. The case that just came down on December 23rd and was submitted to the clerk's office hearing in San Francisco yesterday is Clayworth v. Bonta from Judge Levy in the Eastern District that addresses this issue and points out that there are requirements of the Medicaid Act that are enforceable, and they're not waivable just because the state has to deal with some budgetary problems. The state has certain legal obligations, and the budget has to be constructed within those legal obligations. In Oregon here, the state defendants have acted without regard to their obligations to these individuals, and the issue has been confused, I think, in the district court because of the fact that most in Oregon, the majority of individuals who need nursing facility services have been receiving those services in a waiver setting. Oregon has been very aggressive in its use of waivered services and has used the home and community-based waiver system as an alternative delivery system for providing the nursing facility services that are mandatory. At the excerpt of record on page 251, it's noted that of this core group of individuals who are determined to need nursing facility services, over 28,000 of those have received those services in a waiver setting, as opposed to less than 6,000 received those services in a nursing facility setting. And all of these individuals, the over 28,000 in a waiver setting and the less than 6,000 in a nursing facility setting, need nursing facility care. On page 66 of the excerpt of record, there is the waiver application that has been submitted by the state of Oregon, and that waiver application makes clear that waiver services are only available to individuals who have been determined to need nursing facility services. But we're dealing with this pool of individuals who have been determined to need nursing facility services, and now those services are being eliminated, not because they no longer need the services, but because a certain amount of money has been chiseled away from the budget and has been chiseled away from those mandatory services. And I get back to the question about the dismissal. Plaintiffs are in a horrible predicament here, that they've lost these services, they've been forced out of nursing facilities and of assisted living facilities, they're not receiving services, they're struggling in apartments, and they can't afford to wait for this matter to be dismissed and then to consolidate the appeal and somehow come again before this court. And the reason that we ask for an expedited ruling is to instruct the district court on these two principal points, that these individuals have this core entitlement to nursing facility services that has to be enforced, and in an issue that we haven't discussed much in this 15 minutes, that there is a right under Section 1983 that Congress has established a statutory entitlement for a recognizable class of individuals, and that's a right that's enforceable under Section 1983. And this court needs to pass that message on to the district court, otherwise plaintiffs have no chance of relief, and if we return to this court six or nine months from now, it's already late in the day for our clients, and it's only going to be later, Your Honor. Thank you, counsel. Thank you. We'll hear now from Ms. Metcalf. May it please the Court, Janet Metcalf for the State Defendants. I'll begin, Judge Graber, with your question. And I filed actually last week, and it's obvious from the Court's questions, it hasn't reached you, a request that this Court take judicial notice of the findings and recommendations entered by Judge Jodricks in this case. Well, I'm less interested in taking notice of what's in them. It's just that my question really is to the fact of their existence. Yes, which is where I was going next. I think the fact of their existence and the fact that the process is now even at least a half-step farther than that, objections have been filed to the findings and recommendations, a response has been made. It seems rather likely that a decision will be rendered by the district court fairly soon and judgment entered, and the case law is, I think, clear that at that point, the order ruling on the preliminary injunction is merged into the judgment. I think this case is soon, I don't think moot is the correct term, but will soon be subject to a motion to dismiss, and what will be before the Court, no doubt, is an appeal from the final judgment. Well, is there any way to, just as a practical matter, to roll that all together in a more expedited fashion than might otherwise be the case? In other words, if it went through the regular process, it might be 6 or 9 or 10 months before that judgment gets through the normal civil appeal process and is before some other panel. And that isn't necessarily to anyone's benefit. Agreed. I guess that's more a question for us than for you as to how that could be done. But at that point, what would be relevant is the final judgment, whatever it turns out to be, and the reasoning, whatever it turns out to be behind it. Right. And which will deal, I think, another pragmatic reason for waiting, really, to deal with the final judgment is, as the Court is aware, in this appeal, plaintiffs have chosen to really focus on only two of their five claims, all five of which at least have been dealt with now by the magistrate. So there are some, admittedly related, but additional claims that would need to be briefed. I can certainly tell the Court. I agree it's the Court's matter, not mine. But I can certainly tell the Court from my point of view that I would be agreeable if anyone cares, whether I'm agreeable or not, to some sort of expedited briefing schedule, and if it would be. You have authority to say that on behalf of your clients. Well, I probably have authority to say it on behalf of me, because I think I'm probably the person who would end up having to do it. But, yes, I certainly think the State would be agreeable to that, and if it would make sense to keep the case before this panel, that would certainly be fine as well. It's not clear to me what the process is for setting standards for nursing institution treatment, and whether a State can have a graded set. It seems to me that if it's limited in some way by the budget or whatever, the limit pertains not only to the waiver group, but also to the standard of care to the people who are now in nursing facilities. Is that right? The eligibility standards are the same for both classes. That's what's been eliminated, right? Some of those? Yes. Although, and I hope I'm not being unduly picky here, but I think what is actually before the Court are the changes in the waiver program. Now, admittedly, part of that is a change in the eligibility standards, which impact both waiver services and non-waiver services. Well, that's what it seems to me, that you can't distinguish between them, because if you have an option to use waiver services when nursing care is required, it seems that you're going to have to apply that whether in a nursing facility or in a waiver facility. Well, and I agree, I think, in that sense. But nonetheless, the Medicaid statutes also allow for the setting of reasonable standards for who is and is not going to be eligible. In this instance, where we're dealing directly with waiver services, the changes in those eligibility standards have been submitted to the pertinent federal agency, which has approved them. And I think there is an amount of deference owed here to that decision on the part of a federal agency, which has said, yes, these changes are reasonable. What exactly was approved? What was submitted, and what came back that shows approval? And again, I think more was eventually submitted to the magistrate, and there's some discussion of this in the findings and recommendations. And things were at a bit more preliminary stage, I believe, when the preliminary injunction matter was before the Court. But what was approved was a change in the eligibility standards so that certain levels, levels 11 through 17, were no longer eligible when before they were. That's strictly for the what? Same question. Eligible for what? For both the nursing and the? Yes. The eligibility standards apply to both. And the change that was submitted and approved clearly reflected the change in the Not just the community. As a technical matter, I think the change was simply saying approve these changes to our waiver program. This becomes confusing because the eligibility standards admittedly apply to both, but what was specifically presented to the federal agency was a request to alter the waiver program. Now, what is your specific response to counsel's argument that because the touchstone is medical need, in essence, if there are 17 categories of persons who need nursing services, the State is not allowed to say we'll only deal with 1 through 11. If they want to be in the Medicaid program, they've got to do it this way, and they've got to serve that entire 1 through 17 population. And I simply, in part my response is I simply don't think the Medicaid Act requires that. I don't think it does require saying that if we opt in, we have to give anyone who anyone would ever conceivably say needed these services, we must include them all. We cannot ever make some differentiation. And, of course, now, he says, well, that's true. You could make a medical determination. You could say that the ones who are truly the most medically needy may be 1 through 14. But you can't do it on the basis of money. We can only afford to do 1 through 9. Well, obviously, certainly here the motivation was money. The need to cut something was a monetary pressure. But, nonetheless, medical need is being factored into it because that's, at least in part, what determines the levels, the levels 1 through 17 or 1 through 11 or whatever, with level 1 being the people who need it most and 17 being those who need it least. Right. Just medical or medical and economic? You said in part. No. The levels are medical. Purely medical. Admittedly. The basket cases are number one and the ones at 17 can do some things for themselves. Right. Admittedly, the State's impetus for cutting levels was monetary. The budget had to be cut. But make certain I'm clear on this. I think I was misunderstanding it before. Level 1, certainly you've got to be eligible for Medicaid. But beyond that, level 1 reflects a purely being assigned to level 1 as opposed to level 17 reflects a medical evaluation rather than a neediness in terms of financial wherewithal, which is to say that level 17 isn't the people just barely over the poverty line and level 1 the ones that are. Right. Okay. Right. So it's purely medical in terms of where on the level. Medical and need for services. Who sets the levels? Who sets the levels? Who defines them? The State does in the first instance and then if it's part of a waiver program submits those to the Federal Regulatory Agency and gets approval of them as reasonable criteria. You only have to get approval just for the waiver program? You don't have to get approval for the levels? Well, that's the approval that's before the court in this case. I know, but I'm looking at it just generally. If the State decides that it's going to only provide for levels 1 through 15 for people to go into the nursing facilities or the waiver program, does that have to get approved? The State plan has to be approved as a whole. Has that been done? Yes. I'm not sure that all of that's in the record before this court. By the time our case was sent off to the Ninth Circuit, it may have been done subsequently. Right. Right. I do want to talk just briefly about something that hasn't been talked about very much this morning, but that in our view really is pivotal and that's whether there is a private right of action under any of these provisions of the Medicaid Act. Have you read Judge Levy's opinion? Yes, I have, and I thank counsel for really kind of making special efforts to make sure that I received that and was aware of it. It's dealing with a very different provision. Well, I'm not sure I agree with it, A. But, B, it's a very different provision of the Medicaid Act. It's a provision which is not in any way involved in this case and deals with selection of providers. I think to my mind analytically where I would disagree with the opinion, and I'm not sure I can point you to a page of it at the moment, but when the judge is deciding whether there are the adequate rights-creating language in this particular provision of the Medicaid Act that he's dealing with, he says something along the lines of that there isn't, but that that's really understandable because the way that Congress structured the statute generally was to say what had to be in a state plan. But that strikes me as being just sort of backwards because it might well be that Congress structured the statute in that way so as to suggest that there were no private right of action. 1396A, subsection A10, says a state plan for medical assistance must provide and then you skip down to AI, there's lots of subsections, all individuals who, and then it describes a whole bunch of individuals, what must be provided to those individuals. And doesn't that suggest that there's something specific that Congress wants to have reach those specific individuals who are defined in the statute? And if someone looks at that and says, well, I'm an individual who fits, for example, I'm a qualified pregnant woman as defined in section yada, yada, yada, Congress means me. And my State has one of these plans and they've left me out. Why isn't there a private right implied in that? I think two answers to that. One is that I think that really sort of evokes the argument that the Court rejected in Gonzaga where it said it's not enough to be in the class of persons intended to be benefited by the statute. There must be more than that. There must be explicit, unambiguous, rights-creating language. And I think that all you have, and I'm not going to try to run down all the subsections either, but we're on the same place. All you have here is that kind of language that says you're within the class of people benefited. But then there's also sub double I, which says, then goes on to say at the option of the State, you provide these to individuals who aren't in one, but then you go down to Roman numeral six, who would be eligible if they were in a medical institution and who will receive blah, blah, blah, blah, blah. So and those are the people we're really talking about here, people who are getting home-based community services. And you have to go back to the beginning at the option of the State. So I think double I undercuts one. The option of the State to have a program or not to have a program, once it has a program, there are statutory requirements for it.  And I led with it. It's not spending legislation in quite the same generic way that Gonzaga was dealing with, is it? Well, it's always been considered to be spending legislation. I don't think I've ever seen any decision that said anything other than that it was spending legislation, although I would not say that there are no such decisions. But again, I think, and I say that because I think it's the sort of classic federal government saying to the states, here, you can have this money that we will give you if you agree to certain things. And I think in that classic sense, it really is spending clause legislation. But the reason I led with the first answer rather than the second, although I must say that reading little I and double I here, they seem to me, frankly, to absolutely collide head-on with each other, and I don't really pretend to understand them at this point. But I think the stronger answer is that, yes, I think one could readily say benefits are intended to be provided and given to people by this law, but I don't think that's enough to create a privately enforceable right of action under Gonzaga. And with that, since my time is over, thank you. Thank you. I don't know if you have any time left, but we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. The first point I'd like to make is that all legal issues are essentially before this Court at this point. If we were to come back six months from now and nine months from now to argue the dismissal of this case, we would again be talking about the waiver services versus the nursing facility services, and we would be talking about the enforceability of Section 1983. We're evaluating it under the likelihood of success. We're not evaluating it under the actual success or not success. No. I understand the standard is different, Your Honor, but I can tell you that the legal question, counsel for defendants referenced two additional causes of action, and I don't think they really add that much. It's a theoretical matter, but let's suppose that Judge Hagerty is very busy this week and that tomorrow there's a final judgment in this, in the underlying litigation. What's left for us to do in that circumstance with respect to the preliminary injunction question? I agree. In that, if that were the case, Your Honor, I think that we would, that plaintiffs would return to this Court, try to consolidate the appeals as quickly as possible and expedite the matter for an additional hearing that would deal with both the dismissal and with our request for preliminary injunctive relief. I'm hoping, obviously, for a different chain of events, which is this Court recognizing the danger to plaintiffs in this action who have been deprived of nursing facility services and issuing an order on an expedited basis so that the District Courts understands that the Medicaid Act is enforceable and that individuals have an enforceable right to nursing facility services. I'd like to address Judge Clipton's question about the state Medicaid plan. I know of no approval by CMS for the application of these, of this restricted eligibility to nursing facility services. The only approvals are on page 299 and 300 of the excerpt of record, and they deal exclusively with waiver services, not with nursing facility services. And finally, it's not adequate for the state to just rank individuals and say, we protected the sickest people. There's an obligation in the Medicaid Act to provide nursing facility services to all individuals who need nursing facility services. It would be a very inadequate Medicaid program if it failed to do that, and that's what plaintiffs are asking for, is these are individuals, the terminated individuals, who have been determined for, based on standard views, for more than 20 years to need nursing facility services. Defendants don't argue any different, and these individuals no longer have access to nursing facility services and no longer have access to the alternative services as well. Let me raise one question, which you may not be able to answer, and that's fine. I'm sure you understand that our review of a denial of preliminary injunction is a very deferential one. The standard of review that we apply is not the same standard of review that we would necessarily apply in reviewing a final judgment here. Yes, Your Honor. So you're making a calculation balancing your client's needs for prompt action versus how is the case best put together for your purposes before the court of appeals. And on that basis, I wonder if you might elect to have the cases consolidated rather than have us render a decision based solely on the case in front of us now. Yes. I think that why I don't hesitate asking for early review is that, first of all, my clients can't wait, that every week that goes by is another person who gets sick or dies or is deteriorating. So part of it is time pressure. But also, we are really presenting issues of law before this Court today. There's not really a dispute about facts. Defendants don't question that these individuals need nursing facility services. So I think to a great extent we're arguing two issues of law, the same issues of law, that would be argued in a motion to dismiss. So because the deference extends only to the district court's factual determinations, I feel less hesitancy. Thank you, counsel. Wait, one more question. Because we're late in kind of focusing on the private right of action sort of thing, and that is one of the big themes here as to whether there is. Why isn't the situation that the right of enforcement is the federal government's reviewing and withholding funds as opposed to individual rights of those who are, I believe they're entitled to nursing services? The practical answer is that the federal government never terminates approval for these programs. The legal answer is that that issue was raised both in Wright v. Roanoke Redevelopment and in Wilder v. Virginia Hospital Association. And in both cases, the Supreme Court found that the fact that the federal government had a statutory right to terminate funding did not mean that individuals, nonetheless, couldn't go before a federal court under Section 19-3. How do you best revive Gonzaga? Gonzaga doesn't contest those cases on that point. And Gonzaga is part of a consistent line of cases. Gonzaga clarifies the previous cases by stating that it's not enough for a plaintiff to be within a general zone of interest. You need a finding that there's a particular intent by Congress to benefit this class of individuals. And so Gonzaga doesn't limit plaintiffs' right in this case because these are individuals, I think has been pointed out here, who are specifically identified as Congress. These are people who are financially eligible for Medicaid. And these are the people right here who have an entitlement to the mandatory services guaranteed under federal Medicaid law. Thank you, counsel. Thank you. The case just argued is submitted. We appreciate the arguments of both parties. They've been very helpful. And with that, we will be adjourned for this morning's session.
judges: Hug, Graber, Clifton